## 2604.   STEPHENS *v.* McNAUGHTON.

1. Where a defendant in a distress warrant has replevied the property, the process is converted into an ordinary action for rent, and a motion to dismiss because of an insufficiency of description in the entry of levy will not lie.
2. Mere irregularities in the selection of the jury in the justice's court will not authorize the grant of a new trial, where it is apparent that no injustice or prejudice resulted to the complaining party.

DECIDED JULY 5, 1910.

Certiorari; from Emanuel superior court—Judge Rawlings. February 19, 1910.

*Williams & Bradley,* for plaintiff.

*Saffold & Larsen,* for defendant.

POWELL, J.   Mrs. Stephens caused a distress warrant to be issued against McNaughton.   He replevied.   To an adverse verdict in the justice's court the defendant brought certiorari.   No complaint was made that the verdict was contrary to the evidence. The petition for certiorari contained only two specific assignments of error:   (1)   That the court erred in not dismissing the levy for insufficiency of description; and   (2)   that the justice of the peace, over objection of the defendant, put upon him an illegally impaneled jury and forced him to trial.   The judge of the superior court sustained the certiorari and ordered a new trial in the justice's court, and to this ruling plaintiff excepts.   There being in the certiorari no assignment of error that the verdict is contrary to the evidence, the first grant of a new trial by the judge of the superior court is reviewable, and stands without the aid of any presumption dependent upon the breadth of judicial discretion.   The case must

stand or fall upon the legal sufficiency of the two assignments made.

When the defendant in distress warrant replevies the property, the levy becomes functus, and the proceeding is converted into an ordinary action for rent, with the bond standing as security in the event of a judgment for the plaintiff. At the trial of the issue thus raised, a motion to dismiss the levy will not lie, for the very plain reason that the levy has already become functus.

2. The real point in the case is as to the method of selecting the jury. A jury was drawn and served for the regular court day, which was February 8, but the case was not tried on that day, as by consent of the parties it was continued until February 13; and the court was adjourned until that date. Of the jurors regularly drawn and summoned to attend on February 8, only three responded on that day, and two of these, being related to the parties in the case, were excused from further attendance. It seems that each of the parties to the suit had a great many relatives in the district. Seeing that on this account it would be difficult to get a qualified jury, the justice of the peace retained on the panel the single qualified juror who had responded, and directed the constable to summon talesmen to fill the panel. He also took the list of jurors for the district and went through it, and ascertained that, of the jurors whose names were on this list, there were only sixteen who were qualified, the rest of them being related to one or the other of the parties. He gave this list of sixteen to the constable and told him to summon them to be present on the 13th, the day to which the case had been continued. On the 13th only nine qualified jurors responded, and, this being the exact number required by law for the panel in a justice's court, the justice of the peace ordered that they be impaneled, and caused the parties to strike from the list thus made up.

There is no suggestion that there was any irregularity so far as the orignal drawing of the jury was concerned. Indeed, it is stated in the record that nine men were regularly drawn and summoned to be present on February 8, the day on which the court met. Section 4143 of the Civil Code provides that if there should be a deficiency of jurors at the trial in a justice's court, "from cause or absence," the constable, by direction of the court, shall complete the jury by talesmen. It is undoubtedly regular that the justice of the

peace should not in advance tell the constable what particular persons to summon, the discretion in this respect being vested in the constable, and not in the justice of the peace. However, it is not improper that the justice of the peace should exhibit to the constable the list of the jurors of the district, or that he should tell him not to summon disqualified jurors. When the justice gave the list of sixteen men to the constable, he had no right to tell him which eight of these sixteen he should summon in order to fill the panel. But as he did not choose among them, but told the constable to summon all of them, and as the constable did summon all of them and only eight attended, so that the panel was thus exactly filled, it is plain that no injustice resulted to either party; for if the constable had served only eight originally, and some of these had not attended, it would have been his duty to keep serving others of the qualified jurors of the district until he did complete his panel, so that it should number nine. In other words, the court seems to have reached indirectly the same result that would have been reached directly, and to have reached it by a perfectly fair method that worked no harm to either party. The doctrine that there must be injury as well as error to authorize the grant of a new trial applies with special force to these small cases tried in justice's courts. The judge of the superior court should not have granted a new trial on certiorari.                                    *Judgment reversed.*